IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| LISA LASTER and DOUG LASTER, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | NO.   03-1085 T/An |
| ) | |
| FEDERAL EXPRESS, et al., ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

On August 17, 2004, United States District Judge James D. Todd entered an Order Granting Motion for Default Judgment in this case. Within that Order, Judge Todd entered default judgment against Defendant Marcus Booker ("Booker") for failure to file an answer or any other responsive pleading. Judge Todd has referred this matter to the Magistrate Judge to conduct a hearing and enter a report and recommendation on damages. For the reasons set forth below, the Court recommends that Mr. Booker be required to pay to Plaintiffs $3,300.00.

## BACKGROUND

Plaintiffs Lisa Laster ("Ms. Laster") and Doug Laster ("Mr. Laster") filed this action in the Obion County, Tennessee Circuit Court against Defendants Federal Express, Booker, and John and Jane Doe. Plaintiffs asserted various causes of action that arose when Booker, an employee of Federal Express, allegedly stole checks from a package that was sent by Plaintiffs' bank to Plaintiffs. Booker then fraudulently passed those checks. Federal Express timely removed this action to the Court, and Federal Express filed a Motion for Summary Judgment or in the Alternative for Partial Summary Judgment. On August 10, 2004, Judge Todd granted

1

Federal Express' Motion for Partial Summary Judgment and dismissed the John and Jane Doe Defendants and various causes of action against Federal Express. Judge Todd also capped Plaintiffs' recovery on their claim of breach of contract against Federal Express at $100.00.

The facts of this case are mostly undisputed. In February 2002 Union Planters Bank sent a box of blank checks to Plaintiffs. These checks had been ordered from the John H. Harland Company, which contracted with Federal Express to deliver the checks to Plaintiffs. The checks were delivered to Plaintiffs' home on or about February 22, 2002. When Ms. Laster opened the box of checks, she noticed that one of the boxes of checks was missing. She telephoned Union Planters and advised them that some of the checks were missing, and Ms. Laster asked the bank to stop payment on the checks. Almost a month later, on March 23, 2002, Plaintiffs discovered that some of the missing checks had been fraudulently passed, so Plaintiffs closed their checking account and opened a new account.

A few days later, on March 26, 2002, Plaintiffs notified Federal Express that the box of checks was missing when the checks were delivered. The parties eventually learned that Booker had stolen the checks and written approximately $4,750.13 in bad checks on Plaintiffs' account. By the time Plaintiffs notified Federal Express of the missing checks, Booker was no longer working for Federal Express. His last day with the company was March 15, 2002, and he never returned to Federal Express to pick up his last paycheck. His whereabouts are unknown at this time, and he has not responded or otherwise answered Plaintiffs' Complaint.

The Court held a hearing on this matter on February 1, 2005. In that hearing, and in responses to discovery requests filed by Plaintiffs, Plaintiffs allege they have been subjected to numerous injuries, including: (1) actual damages, (2) embarrassment, (3) harrassment from creditors, (4) emotional distress, (5) loss of enjoyment of life, (6) loss of sleep, (7) mental

distress, (8) defamation, (9) threat of criminal prosecution, and (10) damage to reputation. Plaintiffs' actual damages claim includes costs for long distance phone calls, overdraft charges, the cost of opening a new checking account at their bank, late charges, and the cost of cancelling a life insurance policy. Plaintiffs claim these actual damages total less than $900.00.[1] (*See* Mem. of Law in Supp. of Default Judgment, at Ex. 2).

## ANALYSIS

"The purpose of tort damages in Anglo-American law is to compensate the wronged party for damage or injury caused by the defendant's conduct." *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 703 (Tenn. 1999). Damages should be used "to repair the wronged party's injury, or, at least, to make the wronged party whole as nearly as may be done by an award of money." *Id.* The burden, however, is on the party seeking damages, and the amount of damages is not controlled by any fixed rule of law or mathematical formula. *See id.* Damages should instead be awarded based upon the sound discretion of the trier of fact. *See id.* While Plaintiffs were certainly wronged by Booker's actions, assessing the amount of injury that resulted from Booker's actions is not so clean-cut. As such, the Court will discuss each element of damages sought by the Plaintiffs.

### I. Actual Damages

Plaintiffs are entitled to any actual damages caused by the actions of Booker. Plaintiffs list in their Memorandum in Support of Default Judgment that they are entitled to numerous actual damages, including damages for long distance phone calls of "less than $100," overdraft and late fee charges for returned checks of "less than $500," charges to open a new checking

---

[1] At the hearing, Ms. Laster testified that her actual out-of-pocket damages were probably no more than $300.00.

account of "less than $100," the cost of cancelling a life insurance policy of "less than $100," and late charges on payments of "less than $100." Plaintiffs, however, do not specifically show the actual damages they sustained, as the damages for long distance phone calls, for example, could range from $1.00 to $99.99. After review, the Court is willing to award Plaintiffs the $300.00 in actual out-of-pocket costs Ms. Laster testified she and Mr. Laster incurred at the hearing. Therefore, for these reasons, the Court recommends that Booker be required to pay Plaintiffs $300.00 for actual damages.

## II. Mental Anguish

Many of Plaintiffs' claims can be more specifically defined as a claim for mental anguish. Specifically, claims for embarrassment, harassment from creditors, loss of enjoyment of life, loss of sleep and mental distress all fit into this category. Mental anguish may be awarded by the Court depending on the facts and circumstances of each case, and "[p]ain and suffering encompasses the physical and mental discomfort caused by an injury." *Overstreet*, 4 S.W.3d at 715. These damages "include[] the 'wide array of mental and emotional responses' that accompany the pain, characterized as suffering, such as anguish, distress, fear, humiliation, fried, shame, or worry." *Id.* (quoting *McDougald v. Garber*, 504 N.Y.S.2d 383, 385 (N.Y. Sup. Ct. 1986)).

After a thorough search, the Court has been unable to locate any cases factually similar to the instant case. Most cases involving mental anguish damages are personal injury cases; however, the Court should still make an assessment of damages in this case using its sound discretion. At the hearing, Plaintiffs stated that Mr. Laster was unable to pay by check at Wal-Mart. Furthermore, Plaintiffs stated that for one year, Plaintiffs were denied check cashing privileges and feared that Booker had access to their personal information. Plaintiffs also claim

they received nasty letters from collection agencies. In her affidavit, Ms. Laster states that she and her husband have suffered from "public and private embarrassment and humiliation, loss enjoyment of life, . . . [and] severe anxiety, including but not limited to the threat of arrest if a merchant took one of our forged checks and swore out a complaint against me or my husband . . . ." (Aff. of Lisa Laster ¶ 17). Ms. Laster also states that she and her husband suffered from depression. (*Id.*)

The Court concludes that Plaintiffs have provided no actual proof that they suffered from any of these damages. Plaintiffs have offered no medical bills or other evidence that they were required to see a doctor as a result of Booker's actions, and Plaintiffs cannot prove the extent to which they suffered from any type of embarrassment or loss of enjoyment of life. While not being able to cash a check and receiving a letter from a collection agency is troublesome and somewhat stressful, the Court cannot conclude the actions described by Plaintiffs warrant any award of damages. The Court needs more than general accusations in order to pinpoint an amount of damages. Therefore, after due consideration, the Court recommends that Plaintiffs be awarded no damages for mental anguish.

### III. Intentional Infliction of Emotional Distress

While Plaintiffs make no specific claim for intentional infliction of emotional distress, some of Plaintiffs' claims could have resulted in an intentional infliction of emotional distress. Intentional infliction of emotional distress in Tennessee requires proof of three elements: "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct must result in serious mental injury to the plaintiff." *Miller v. Willbanks*, 8 S.W.3d 607, 612 (Tenn. 1999). After review, the Court does not find that the Plaintiffs have satisfied the three elements necessary to support a

claim of intentional infliction of emotional distress. While stealing the checks was an intentional act, Plaintiffs have not shown that Booker's conduct resulted in serious mental injury to the Plaintiffs.

In *Wells v. Huish Detergents, Inc.*, the Sixth Circuit noted that a plaintiff's allegations of embarrassment, loss of sleep, and damage to one's reputation taken alone do not establish a claim of intentional infliction of emotional distress. *Wells v. Huish Detergents, Inc.*, No. 00-5203, 2001 WL 873745 (6th Cir. July 24, 2001). In *Wells* the Sixth Circuit pointed out that the plaintiff did not seek any medical treatment or take any medication to address his emotional state. *See id.* Similarly, in this matter, Plaintiffs have not shown they were required to take medication or see a physician to treat their mental anguish. Therefore, for these reasons, the Court recommends that Plaintiffs should not be awarded any damages for intentional infliction of emotional distress.

## IV. Other Claims

Plaintiffs assert three other claims against Booker: (1) damage to credit score, (2) threat of criminal prosecution, and (3) defamation. After a thorough review of case law, the Court cannot locate a specific cause of action for damage to one's credit score. Being as generous as possible to Plaintiffs, the Court could group damage to credit score along with the other causes of action making up Plaintiffs' claim for mental anguish; however, as discussed above, Plaintiffs have not proven they actually suffered from mental anguish. Therefore, the Court recommends that Plaintiffs not be awarded damages for a claim of damage to credit score. Additionally, in Tennessee, a threat of criminal prosecution is synonymous with duress, which involves contractual duties and rights. *See Reynolds v. Metropolitan Nashville-Davidson County*, No. 01-A-019010CV0363, 1991 WL 20408, at *3-4 (Tenn. Ct. App. Feb. 21, 1991). In other words,

there is no actual cause of action in Tennessee when one simply states he or she will prosecute another. Moreover, even if some award of damages was possible, Booker did not threaten Plaintiffs with criminal prosecution. For these reasons, Plaintiffs are not entitled to damages for a threat of criminal prosecution.

In Tennessee, in order to prove a claim of defamation, one must prove (1) the defendant published a statement, (2) with knowledge that the statement is false and defaming to the other, (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. *See Thompson v. Wilson*, 2004 WL 115160 (Tenn. Ct. App. 2004) (attached). In this matter, there has been no publication, so there has been no defamation. For these reasons, Plaintiffs are not entitled to damages for defamation.

## V. Punitive Damages

Plaintiffs also request punitive damages be awarded for Booker's conduct. In Tennessee, the Court should hold a bifurcated trial to determine punitive damages; however, because default judgment has been entered, it is appropriate at this time for the Court to determine if punitive damages should be awarded to Plaintiffs. Punitive damages "should operate to punish the defendant and deter others from like offenses." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896 (Tenn. 1992). "Tennessee presently allows punitive damages in cases involving fraud, malice, gross negligence, oppression, evil motives, conscious indifference, and reckless conduct implying 'disregard of social obligations.'" *Id.* at 900-01. These damages should be awarded in only cases involving the most egregious of wrongful acts. *See id.* at 901. Therefore, in Tennessee, the Court can award punitive damages only if the defendant acted intentionally, fraudulently, maliciously, or recklessly. *See id.*

There is little denying that Booker's conduct was intentional. As a trusted employee of Federal Express, Booker opened a private package and removed a box of checks that should have been delivered to Plaintiffs. Booker then took these checks and traveled around the community writing fraudulent checks on Plaintiffs' account. Booker's actions involved fraud, an evil motive, were reckless, and simply disregarded his social obligations. Therefore, the Court concludes that punitive damages should be awarded to Plaintiffs.

The Court must next determine the amount of punitive damages that should be imposed on Booker. When determining the amount of punitive damages, it should be remembered that the primary purpose of punitive damages is to deter misconduct. The trier of fact should take into account nine factors when awarding punitive damages, including:

> (1) The defendant's financial affairs, financial condition, and net worth;
> (2) The nature and reprehensibility of defendant's wrongdoing, for example
>     (A) The impact of defendant's conduct on the plaintiff, or
>     (B) The relationship of defendant to plaintiff;
> (3) The defendant's awareness of the amount of harm being caused and defendant's motivation in causing the harm;
> (4) The duration of defendant's misconduct and whether defendant attempted to conceal the conduct;
> (5) The expense plaintiff has borne in the attempt to recover the losses;
> (6) Whether defendant profited from the activity, and if defendant did profit, whether the punitive award should be in excess of the profit in order to deter similar future behavior;
> (7) Whether, and the extent to which, defendant has been subjected to previous punitive damage awards based upon the same wrongful act;
> (8) Whether, once the misconduct became known to defendant, defendant took remedial action or attempted to make amends by offering a prompt and fair settlement for actual harm caused; and
> (9) Any other circumstances shown by the evidence that bear on determining the proper amount of the punitive award.

*Id.* at 901-02. The United States Supreme Court has further defined steps a court should take when reviewing if punitive damages are appropriate. Three factors the court should take into account are: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity

between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003).

In taking into account the nine Tennessee factors and the Supreme Court's factors, the Court concludes that Booker should be required to pay punitive damages to Plaintiff. To begin, the nature and reprehensibility of Booker's wrongdoing is severe. Reprehensibility is determined "by considering whether the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; [or whether] the target of the conduct had financial vulnerability . . . ." *State Farm*, 538 U.S. at 419. People utilize delivery services in order to ensure the safe delivery of property from one person or business to another. Employees of these companies must not be allowed to take advantage of private citizens and steal directly from customers.

Booker gained financially by passing fraudulent checks, and Booker took no remedial actions after committing his intentional and malicious act. Furthermore, Plaintiffs suffered actual out-of-pocket losses because of Booker's conduct. The Court concludes that Booker should be required to pay punitive damages to Plaintiff based upon the amount of compensatory damages already awarded.

As discussed in the *State Farm* case, there is no bright-line ratio for determining punitive damages, as compared to compensatory damages. *See id.* at 424-25. Due process, however, requires that courts be fair in imposing punitive damages. Therefore, "[s]ingle-digit multipliers are more likely to comport with due process, which achieving the . . . goals of deterrence and retribution, than awards with ratios in range of 500 to 1 . . . or . . . 145 to 1." *Id.* at 425. Overall,

"courts must ensure that the measure of punishment is both reasonable and proportionate tp the amount of harm to the plaintiff and to the general damages recovered." *Id.* at 426.

In this case, the Court finds that Defendant Booker should be required to pay punitive damages of $3,000.00. Although this amount of punitive damages is a 10 to 1 ratio, and not a single digit ratio of 9 to 1 or less, the Supreme Court held that higher ratios may be allowed when there is a "particularly egregious act [that] has resulted in only a small amount of economic damages." *Id.* at 425. The instant case seems exactly the type of case the Supreme Court envisioned in the *State Farm* case. Booker intentionally stole checks from Plaintiffs, and Booker used these checks to purchase goods and services. While Plaintiffs' bank may have reimbursed them for the funds used by Booker, Plaintiffs are not in the place they were before this incident occurred. The Court believes that awarding them $3,000.00 in punitive damages will make Plaintiffs more whole.

Therefore, for good cause shown and because of Defendant's intentional and egregious conduct, the Court recommends that Booker be required to pay to Plaintiffs $3,000.00 in punitive damages.

## **CONCLUSION**

For these reasons, the Court recommends that Plaintiffs be awarded $3,300.00 by Booker for his conduct against the Plaintiffs.

ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN TEN (10) DAYS FROM THE DATE OF SERVICE OF THE REPORT. FAILURE TO FILE THEM WITHIN TEN (10) DAYS OF SERVICE MAY

CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.

*S. Thomas Anderson*
S. THOMAS ANDERSON
UNITED STATES MAGISTRATE JUDGE

Date: September 02, 2005

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 52 in case 1:03-CV-01085 was distributed by fax, mail, or direct printing on September 6, 2005 to the parties listed.

---

Thomas Whitelaw Murrey
FEDEX CORPORATION
3620 Hacks Cross Rd.
Third Floor, Building B.
Memphis, TN 38125--880

Hal D. Hardin
LAW OFFICES OF HAL D. HARDIN
218 Third Ave. North
Nashville, TN 37201

C. Mark Donahoe
HARDEE MARTIN DAUSTER & DONAHOE
P.O. Box 98
Jackson, TN 38302

Honorable James Todd
US DISTRICT COURT